**UNITED STATES of America**

v.

**Dean Anthony BECKFORD, Claude Gerald Dennis, Leonel Romeo Cazaco, Richard Anthony Thomas, Llewellen Fernando Smith.**

**Criminal Nos. 3:96CR66–01, 3:96CR66–05 to 3:96CR66–07 and 3:96CR66–20.**

United States District Court,
E.D. Virginia,
Richmond Division.

May 13, 1997.

---

David Novak, Stephen Miller, Andrew McBridge, Asst. U.S. Attys., Richmond, VA, for U.S.

Gerald T. Zerkin and Robert J. Wagner, Richmond, VA, for Dean Anthony Beckford.

John C. Jones, Quinton, VA, Scott Brettschneider, Kew Gardens, NY, for Claude Gerald Dennis.

Reginald M. Barley, Richmond, VA, Cary B. Bowen, Bowen & Bowen, Richmond, VA, for Leonel Romeo Cazaco.

David P. Baugh, Richmond, VA, Elizabeth D. Scher, Morchower, Luxton & Whaley, Richmond, VA, for Richard Anthony Thomas.

Jeffrey Everhart, Richmond, VA, for Llewellen Fernando Smith.

## MEMORANDUM OPINION

PAYNE, District Judge.

Before the Court is the Government's Motion to Quash *ex parte* subpoenas duces tecum returnable before trial which were issued under seal by the Court upon *ex parte* application by individual defendants. The Government also moved to stay delivery to the defendants' counsel of the documents, production of which had been required by the subpoenas. For the reasons set forth below, the Government's motion is granted in part and denied in part.

## BACKGROUND

Defendants Dean Anthony Beckford, Claude Gerald Dennis, Leonel Romeo Cazaco and Richard Anthony Thomas have been charged in the Superseding Indictment with the capital crime of intentional murder in furtherance of a Continuing Criminal Enterprise and a drug trafficking conspiracy punishable under 21 U.S.C. § 841(b)(1)(A), in violation of 21 U.S.C. § 848(e). Pursuant to 21 U.S.C. § 848(h), the Government has notified each defendant that it intends to seek a penalty of death in the event of conviction and has posited with specificity the statutory and non-statutory aggravating factors which it will seek to prove as the basis for imposition of the death penalty. Pursuant to 18 U.S.C. §§ 3005 and 3006, the Court has appointed two attorneys to defend each of the death-eligible defendants, finding that the defendants were financially eligible for those services.[1]

With the approach of trial, defendants Beckford, Cazaco and Thomas filed *ex parte* applications for subpoenas duces tecum. re-

---

1. Defendant Dennis was subsequently granted leave to substitute retained counsel for one of his court-appointed attorneys. The fees of that counsel are being paid by the defendant's family.

quiring the pre-trial production of specified documents. The documents subpoenaed by the defendants fall into three general categories:

(1) records from state and federal correctional facilities and other state governmental agencies concerning the requesting defendants;

(2) state law enforcement records concerning the statements, criminal activities, and general backgrounds of specified individuals who are victims of the crimes alleged in the Superseding Indictment and/or prospective Government witnesses in this case; and

(3) state court probation records respecting prospective Government witnesses.

The Government also has filed an *ex parte* application of its own for a subpoena duces tecum requiring pre-trial production of school records of one defendant which the Government shared with the affected defendant (as has been represented in the *ex parte* motion for issuance of the subpoena).

The Court initially granted these *ex parte* applications of the Government and of the defendants, and issued the requested' subpoenas *ex parte* and under seal. Some of the subpoenaed documents in Categories (1) and (3) were delivered to the Clerk and copies have been delivered to counsel at whose behest the subpoena was issued. A few of the documents listed in Category (2) also have been delivered to the Clerk and copies have been provided to counsel who issued the subpoena. Other documents in Category (2) have been delivered to the Clerk, but copies have not been provided to counsel. None of the documents delivered to counsel for defendants are of the sort which the Government apprehends might jeopardize its rights or the safety of its witnesses if information in them were publicly known.

At this point, it is necessary briefly to explain what seems to be the root problem respecting issuance of subpoenas in Category (2) to certain state law enforcement agencies: a lack of clarity in the identification of the law enforcement entities involved in prosecuting this case. A brief look at the history of the case is therefore appropriate.

Before late 1995, the investigation of many of the crimes charged or involved in this case was exclusively in the hands of state law enforcement agencies. As one would expect, some victims and other persons who the Government now says may be witnesses in this case provided statements to the state law enforcement agencies which were at the time handling the investigation. However, in late 1995, federal and state law enforcement agencies formed a working investigative unit called the Richmond Cold Homicide Task Force (hereinafter the "Task Force") which took over the investigation and prosecution of what is now this case. As the Court recently has been informed, the Task Force is comprised of members of the Richmond Police Department, the Virginia State Police and the Federal Bureau of Investigation. It also involves the Commonwealth's Attorney for the City of Richmond. According to the defendants, the files of the state agencies contain: (i) exculpatory information; and (ii) statements which can be used to impeach the Government witnesses and otherwise aid presentation of the defense. On that basis, the defendants sought production of that information directly from the state agencies by subpoena duces tecum. The Government, however, asserts that the Rule 17(c) subpoenas duces tecum were improperly issued, because all files of the law enforcement agencies comprising the Task Force are in the hands, or under the control, of the Government; and that, therefore, production of statements and other information generated by the state law enforcement agencies before the formation of the Task Force is controlled by the rules of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and the Jencks Act, 18 U.S.C. § 3500, and the Court's earlier orders respecting *Brady, Giglio,* and Jencks Act material.

The Jencks Act and *Brady* and its progeny govern the production by the Government of prosecution witness' pre-trial statements and favorable evidence to the defense which are *in the possession of the Government.* At the outset, then, in determining the applicability of the Jencks Act and the *Brady* doctrine, it is necessary for the court to determine what agencies comprise the "Government." Until required to do so recently, however, the Gov-

ernment has not identified specifically what agencies it considers to be included within the scope of its obligations respecting production of Jencks, *Giglio* and *Brady* material. Moreover, in some pleadings respecting the nature and extent of its obligations, the Government disclaimed any obligation to search, or produce material from, the files of certain state law enforcement agencies. Although the Government's earlier disclaimer related only to state courts and state probation agencies, there was some doubt whether state prosecutor's offices were also within the reach of those statements.

In any event, the Court was left with the impression that the' state and federal efforts were far more separate than, in fact, they were. Thus, the Court approved the issuance of defense subpoenas to state law enforcement agencies, considering those agencies not to be part of the Government for Jencks and *Brady* purposes. Although the Government argues otherwise, counsel for the defendants may have made the same mistake with respect to their subpoena requests to state law enforcement agencies as did the Court. Or, as the Government suggests, perhaps counsel for the defendants may have construed the Court's earlier decisions more narrowly than is warranted by their text. In either case, the defendants sought the requested information by subpoena under Rule 17(c), apparently of the view that the material was not the subject of the Court's previous decision respecting the timing of production of Jencks, *Giglio* and *Brady* material in the possession or control of the Government.

The Government's motion to stay and to quash was filed immediately after service of a subpoena (in Category (2)) on an officer of the Richmond Police Department. The Government, having learned of the issuance of that subpoena, immediately thereafter moved to stay production of all documents subpoenaed *ex parte* and to quash all *ex parte*

subpoenas. The Government asserted two bases for the relief sought: (1) that the subpoenas could not properly have been issued *ex parte* given the nature of the documents which were the subject of the subpoenas;[2] and (2) that many of the requested documents constitute *Brady, Jencks,* or *Giglio* material, production of which is governed by previous court orders, *see United States v. Beckford, et al.,* 964 F.Supp. 993 (E.D.Va. 1997), and which is not permitted under Rule 17(c). The Government's previous pleadings have documented its concerns respecting the safety of its witnesses, some of whom had given statements which were called for by some of the subpoenas.

Finding merit in the Government's second contention, the Court unsealed the *ex parte* subpoenas (and the orders pursuant to which they were issued).[3] The parties subsequently have resolved their disputes over most of the subpoenas, and the motions to quash and to stay many of the subpoenas previously at issue are now moot. See United States' Statement Regarding Subpoenas (filed April 28, 1997) at 1–3. However, there are several subpoenas duces tecum and the documents produced in response thereto which remain under seal. Further, there is pending another *ex parte* motion for subpoenas, and other such motions are to be filed as trial grows closer. For those reasons, and to resolve the remaining general dispute over the availability of *ex parte* process under Rule 17(c), the Court has decided to reconsider the issue of whether, and to what extent, a district court may consider an *ex parte* motion for subpoenas duces tecum.

## DISCUSSION

### I. FEDERAL RULE OF CRIMINAL PROCEDURE 17: A BRIEF PERSPECTIVE.

The challenged subpoenas were issued pursuant to Fed.R.Crim.P. 17(c), upon sepa-

---

**2.** The Government does not take the position that *ex parte* process is entirely unavailable to the defendants under Rule 17(c). On the contrary, the Government, in its papers, asserts that in limited circumstances *ex parte* process may be appropriate. However, with respect to the subpoenas of which the Government has learned, it contends that *ex parte* process should not have been employed.

**3.** The applications for the subpoenas contained information respecting trial strategy and hence the applications remain under seal. Some orders restricted the scope of the documents requested in the *ex parte* motions for issuance of the subpoenas. Others did not.

rate *ex parte* motions by the United States, Dean Beckford, Leonel Cazaco, and Richard Thomas. It is therefore necessary to assess whether, and to what extent, a district court has authority to issue *ex parte* subpoenas under Rule 17(c). The parties were asked to brief this issue, and their submissions have been helpful, but far from complete, for the issue is not a settled one. As a preface to consideration of this issue, it will be useful briefly to examine the structure and development of Rule 17.

The rule controls issuance of subpoenas in criminal cases, and outlines the method by which the Government and defendants in those cases may procure subpoenas from the district court. Rule 17 provides both for the issuance of trial subpoenas ad testificandum and subpoenas duces tecum. When a party requests issuance of a subpoena "for the attendance of a witness" at trial, Rule 17(a) directs the clerk to issue the subpoena "signed and sealed but otherwise in blank," to that party; the party (most often counsel) then fills in the necessary information before service of the subpoena. To effectuate proper service, however, the party must deliver with the subpoena the appropriate fee for one day's attendance at trial and the cost of allowable mileage. If the requesting party has financial resources sufficient to satisfy these requirements, the entire process may be completed without any intervention by the court (other than the application to the Clerk) and without notice to the adverse party.

Rule 17(b) addresses the rather common situation which arises when a defendant who requests issuance of a subpoena ad testificandum cannot pay the requisite fees which make the subpoena effective. Thus, Rule 17(b) establishes a procedure by which indigent persons may acquire necessary subpoenas for trial witnesses.

Before 1966, however, this provision was not so advantageous to indigent defendants. That is because, before its amendment in 1966, Rule 17(b) compelled indigent defendants to make a substantial showing that the requested evidence would be material and that "the defendant could not safely go to trial," without the witness. 2 Charles A. Wright, Federal Practice & Procedure: Criminal § 272 at 137 (2d ed.1982, 1996 Supp.). Moreover, the indigent defendant was required to submit to the district court an affidavit, which was then made available to the Government, naming the requested witness and describing the testimony which the witness was expected to provide. *Id.* Of course, defendants with means were not required to make these showings because no federal funds were required to obtain service or to pay for witness fees.

Therefore, the rule effectively discriminated against impoverished defendants because, in order to obtain testimony essential to their defense, indigent defendants were obligated to reveal to the Government the identity of defense witnesses and the defense's trial strategy.[4] In other words, "Rule 17(b) [presented] an indigent with [a] Hobson's choice: either to make no defense or disclose his whole case to the Government before his trial." *Smith v. United States,* 312 F.2d 867, 872 (D.C.Cir.1962) (Skelly Wright, J., concurring in part and dissenting in part) (*quoted in United States v. Hang,* 75 F.3d 1275, 1281 (8th Cir.1996)).[5]

---

4. Moreover, it was even held that statements in the defendant's affidavit might be used to impeach the defendant at trial, despite the constitutional privilege against self-incrimination. *See* 2 Wright, Federal Practice and Procedure: Criminal 2d § 272 at 138 (*citing Smith v. United States,* 312 F.2d 867 (D.C.Cir.1962)).

5. Judge Wright succinctly stated the "Hobson's choice" which faced indigent defendants under the old version of Rule 17(b) in his oft-quoted concurrence and dissent in *Smith v. United States:*

> To obtain witnesses under Rule 17(b), the indigent is compelled to tell the Government, un-

der oath, who they are, where they live, and what they will testify to. In addition, the defendant, in his affidavit, shall show that the evidence of the witness[es] is material to the defense, that the defendant cannot safely go to trial without them. Not only must the accused speculate as to what the witnesses will say, but he must explain, under oath, the materiality of the testimony to his defense.

312 F.2d at 873 (Wright, J., concurring in part and dissenting in part). No serious quarrel can be advanced in opposition to those observations about former Rule 17(b).

The 1966 amendment ameliorated this inequity by enacting Rule 17(b) in its present form. The United States Court of Appeals for the Eighth Circuit summarized the amended procedure under Rule 17(b) as follows:

> Under the modern version of the Rule, an indigent defendant is entitled to submit to the court, without notice to the Government, an *ex parte* application for a witness subpoena. In order to obtain the subpoena, the defendant must only make a satisfactory showing that he "is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense." Fed.R.Crim.P. 17(b). This places all defendants, whether impoverished or with ample financial resources, on equal footing, and it prevents the Government from securing undue discovery.

*United States v. Hang*, 75 F.3d at 1281. In effect, then, the *ex parte* procedure provided for in the current iteration of Rule 17(b) secures for the indigent defendant the benefits of the rule which, for affluent defendants, authorizes compulsory attendance of witnesses without requiring notice or disclosure to the Government.

Rules 17(a) and (b), of course, deal only with subpoenas compelling the attendance of witnesses at trial. It is Rule 17(c) that regulates the far different matter of "production of" documentary evidence and of objects." Fed.R.Crim.P. 17(c). To that end, Rule 17(c) provides for the issuance of subpoenas duces tecum:

> A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

Fed.R.Crim.P. 17(c).

Rule 17(c) authorizes a party to require, by subpoena, in addition, or as an alternative, to the attendance of a witness at trial, the production of documents or other physical evidence within the custody and control of the individuals who must respond to the subpoena. However, unlike a trial subpoena ad testificandum issued under Rule 17(a) or 17(b), a subpoena duces tecum may be made returnable *before*, as well as at, trial. To that end, the rule confers discretionary power upon the courts to direct production "before the court at a time prior to trial or prior to the time when they are to be offered in evidence." *Id.* Discretion is also given the courts to provide for pre-trial "inspect[ion] by the parties and their attorneys" of the subpoenaed documents. And, the rule provides an opportunity for the holder of the subpoenaed documents to challenge a subpoena duces tecum by a motion to "quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed.R.Crim.P. 17(c). *Id.*

■ Of course, Rule 17(c) reflects the command of the Sixth Amendment that the full power and processes of the courts are available to defendants in criminal cases to help them defend against the charges brought by the Government. And, because it was enacted in order to "expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials," *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951), Rule 17(c) is more far reaching than testimonial subpoenas. Rule 17(c) is not, however, "intended to provide an additional means of discovery." *Id.* Accordingly, to secure pre-trial document production, the party seeking information under Rule 17(c) must show that the requested information is relevant, admissible and specific. *United States v. Nixon*, 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103–04, 41 L.Ed.2d 1039 (1974).

The correct interpretation of subsection (c) of Rule 17 lies at the heart of the disputes which are the subjects of this motion. Analysis of that not so simple issue follows.

## II. RULE 17 AND SUBPOENAS DUCES TECUM.

A subpoena duces tecum is the vehicle for securing production of documents and things at a specified time and place either before or after the time of trial.[6] Because Rule 17(c) does not articulate the device by which a party can invoke the court's discretionary power to decide the timing of production, the question arises whether the timing decision must be sought by motion. Additionally, it is necessary to decide whether a motion, if required, can be made *ex parte* and whether the documents, once produced, must be made available to the opposing party. These two issues will be addressed in turn with respect to both trial and pre-trial subpoenas duces tecum.

### A. SUBPOENA DUCES TECUM RETURNABLE AT TRIAL.

#### 1. Necessity of a Pre–Issuance Application for Trial Subpoenas Duces Tecum.

Although Rule 17(c) does not discuss the procedure for obtaining a subpoena duces tecum, the text of the rule suggests that an application for a subpoena duces tecum returnable at trial is governed by the procedural provisions in Rule 17(a) and (b) The first sentence of Rule 17(c) provides: *"A subpoena may also command* the person to whom it is directed to produce the books, papers, documents or other objects designated therein." Fed.R.Crim.P. 17(c) (emphasis added). It has been held that the "subpoena" in that sentence refers to the subpoena which is the subject of the immediately preceding two subsections, Rules 17(a) and 17(b). Specifically, the courts uniformly have recognized that the use of the words "may also command" in subsection (c) means that a subpoena issued under Rule 17(a) or (b) may require the subpoenaed individual, in addition, or as an alternative, to testifying at trial, to produce specified books, records and documents at trial. *United States v. Hang,* 75 F.3d 1275, 1282 (8th Cir.1996); *United States v. Reyes,* 162 F.R.D. 468, 469 (S.D.N.Y.1995); *United States v. Florack,* 838 F.Supp. 77, 79 (W.D.N.Y.1993); *see also* 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 150 n. 2 (noting that the first sentence of Rule 17(c) clearly indicates that the general provisions of Rule 17 apply to a subpoena duces tecum returnable at trial).[7] Thus, the courts have treated trial subpoenas duces tecum as simply a type of subpoena that can be issued under the procedures set forth in Rules 17(a) and (b).

The same analysis convinced a leading commentator that "[a] district court seems clearly right in construing Rule 17(b) as applying to a subpoena duces tecum as well as to a subpoena to testify." 2 Wright, Federal Practice and Procedure: Criminal 2d § 272 (1996 Supp.) at 40 (*citing United States v. Florack,* 838 F.Supp. at 79). The premise for that assertion is that Rule 17(c) should be interpreted in perspective of the provisions of Rules 17(a) and (b). This view was succinctly stated by the district court in *United States v. Florack:*

> It is, of course, true that Rule 17(c) does not specifically discuss a process for obtaining such subpoenas by an *ex parte*

---

**6.** *See* 25 James Wm. Moore, *et al.,* Moore's Federal Practice § 617.03 at 617–11 (3rd Ed.1997). The subpoena may require the designated production to be made either *at trial* ("trial subpoena duces tecum") or *before trial* ("pre-trial subpoena duces tecum"). Documents, of course, may be produced at court proceedings other than trials. 2 Wright, Federal Practice and Procedure: Criminal 2d § 271 at 134 ("[Rule 17] is not limited to subpoena for the trial. A subpoena may be issued for a preliminary examination, a grand jury investigation, a deposition, for determination of an issue of fact raised by a pretrial motion, or for posttrial motions.") (citations omitted); *see, e.g. United States v. Florack,* 838

F.Supp. 77 (materials to be subpoenaed in connection with a pre-trial suppression hearing).

**7.** As noted by some courts and commentators, Official Form 21 (Subpoena to Produce Document or Object) in the Federal Rules provides support for the proposition that the general provisions of Rule 17 apply to subpoenas duces tecum returnable at trial. Form 21 commands a subpoenaed party to appear at a place and time to be specified by the party filling out the subpoena to "testify in the case of *United States v. John Doe* and bring with you ————." *United States v. Reyes,* 162 F.R.D. at 469 n. 1, 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 150 n. 3.

application. It is also true, however, that the section does not describe any process for obtaining the subpoena. *Nothing in Rule 17(c) suggests that the initial application should be any different from the application for a subpoena which does not happen to require that the subpoenaed witness produce documents.*

838 F.Supp. at 79 (emphasis added).

▌▌▌ Based on these considerations, the Court finds that "[t]he general provisions of the other subdivisions of the rule apply on such matters as form and issuance, defendants unable to pay, and service of the [trial] subpoena [duces tecum]." 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 150. It follows, then, that because a financially able defendant and the Government may issue a trial subpoena ad testificandum without the need for court intervention under Rule 17(a), a financially able party also need not seek leave of court by motion before issuance of a Rule 17(c) trial subpoena duces tecum. And, because today's Rule 17 contemplates that all parties in a criminal case, indigent or not, will be on equal footing as respects the ability to subpoena evidence without disclosure to its documents, an indigent defendant is entitled, under Rule 17(c), to issuance of subpoenas duces tecum returnable at trial by making the same showing as required by Rule 17(b) to secure issuance of a trial witness subpoena.

### 2. *Ex Parte* Applications For Trial Subpoenas Duces Tecum.

However, to effectuate the rights provided by Rule 17(c), the indigent defendant must secure an order requiring the United States Marshal to serve the subpoena duces tecum and to pay other associated fees. Therefore, it is necessary that a court authorize service and payment of fees from the government coffers. To that end, an application for service and funds must be made to the court.

It, therefore, is necessary to determine whether the indigent defendant may apply *ex parte* for the subpoena duces tecum and the funding and service necessary to effectuate it. Whereas, Rule 17(b) permits *ex parte* applications for trial witness subpoenas, Rule 17(c) does not contain a parallel provision. It

is necessary, then, to assess Rule 17, as a whole, and to look to the Constitution to decide whether Rule 17(c) permits *ex parte* application for trial subpoenas duces tecum.

#### a. The Rule

By interpreting Rule 17(c) in perspective of its companion provisions in Rules 17(a) and (b), there is authority in Rule 17(c) for allowing indigent defendants to obtain trial subpoenas duces tecum under the same *ex parte* procedure provided by Rule 17(b) for obtaining trial witness subpoenas. The financially able defendant may secure service by paying a professional process server, and, may make arrangements to pay the costs of the served party in complying with the subpoena. Thus, a financially able defendant may issue a trial subpoena duces tecum without leave of court and without providing notice to the Government. Were an indigent defendant not entitled to *ex parte* process to obtain the same subpoena, the defendant would be confronted, as to trial subpoenas duces tecum, with the precise dilemma that Congress intended to eliminate for trial witness subpoenas by its 1966 revisions to subsection (b).

As explained, the 1966 amendment to Rule 17 was effected to assure that all defendants, without regard to financial ability, could subpoena witnesses without having to reveal to the Government their witness lists or trial strategies. And, "[w]hether a defendant seeks to subpoena a witness or a witness with documents should not affect the process that Congress created." *United States v. Florack*, 838 F.Supp. at 79. Hence, construed as a cohesive whole, Rule 17 itself affords authority for the *ex parte* issuance of subpoenas duces tecum returnable at trial, just as it permits the *ex parte* issuance of subpoenas for trial witnesses.

#### b. The Constitution

There is also constitutional support for an interpretation of Rule 17(c) which authorizes an *ex parte* process for the acquisition of a trial subpoena duces tecum by indigent defendants. That support is to be found in the Sixth and Fifth Amendments.

### (i) The Sixth Amendment

The Sixth Amendment, of course, affords a criminal defendant' the right to compulsory process in aid of the defense case. U.S. Const. Amend. VI. This right is considered fundamental to the right to a fair trial. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S.Ct. 989, 1000–1001, 94 L.Ed.2d 40 (1987) ("criminal defendants have the right to the Government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt."); *Washington v. Texas*, 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019 (1967); *see also* 25 Moore's Federal Practice §§ 617.02[1] at 617–7, 617.07[1] at 617–17 (citing cases). "Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir.1988) (*citing California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984)), *cert. denied sub nom., Martin Marietta Corp. v. Pollard*, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989); *see also United States v. Jenkins*, 895 F.Supp. 1389, 1395 (D.Haw.1995) (The purpose of Rule 17(c) "is to provide compulsory process to insure that the defendant can obtain favorable evidence at trial."); 25 Moore's Federal Practice § 617.02[1] at 617–7 ("Rule 17 implements this guarantee by providing for the issuance of subpoenas in criminal trials."); 2 Wright, Federal Practice and Procedure: Criminal 2d § 271 at 134. Indeed, *"[t]he essential purpose of the Rule* is to implement the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in the accused's favor." 25 Moore's Federal Practice § 617.08[1] at 617–21 (emphasis added).

Forcing the indigent defendant to confront the choice between issuing no trial subpoenas duces tecum (to preserve his theory of defense and thus rely on voluntary production of requested evidence) or "disclos[ing] his whole case to the Government before trial," (to assure production of requested evidence) is an unconstitutional limitation on the defendant's right to compulsory process because "[t]he indigent's Sixth Amendment right to compulsory process for obtaining witnesses would mean little indeed if he were required to" provide the Government with undue discovery in order to fulfill it. *Smith v. United States*, 312 F.2d at 872 (Skelly Wright, J., concurring in part and dissenting in part). In essence, then an indigent defendant's full enjoyment of the right to compulsory process can be guaranteed only by providing an *ex parte* process by which to have trial subpoenas duces tecum issued.

### (ii) The Fifth Amendment

An indigent defendant's right to subpoena, and to present, evidence rests also on the Fifth Amendment right to due process, which precludes subjecting a defendant to disabilities in the criminal justice system because of the defendant's financial status. The Supreme Court long ago made clear that the Constitution prohibits differentiating between defendants who are able to pay and those who are not, at least as to the process by which they may defend against criminal charges. *See, e.g. Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Indeed, one leading commentator has recognized that this line of Supreme Court authority "caused serious question to be raised about the constitutionality of [the pre–1966 version of Rule 17(b)]." 2 Wright, Federal Practice and Procedure: Criminal 2d § 272 at 139 (*citing Greenwell v. United States*, 317 F.2d 108, 110 n. 5 (D.C.Cir.1963)).

A construction of Rule 17(c) which foreclosed the use of ex parte process to obtain a trial subpoena duces tecum likewise would raise serious question about the constitutionality of that rule. The district court, in *United States v. Florack*, correctly recognized that:

> [T]o conclude that Rules 17(a) and 17(c) permit an individual of financial means to subpoena both witnesses and documents without notice to the Government, while Rules 17(b) and 17(c) only allow an indigent defendant to subpoena witnesses, would result in a disability based on finan-

cial status in violation of the Fifth Amendment.

838 F.Supp. at 79. The right to apply *ex parte* for a trial subpoena duces tecum and payment of the associated fees is necessary to avoid disadvantaging defendants who are financially unable to pay. *See United States v. Jenkins,* 895 F.Supp. at 1395 ("Assuming that the application is for production at trial, the fact that a defendant with funds may proceed without application mandates that a defendant without funds also be allowed to proceed *ex parte.*"). For those reasons, the Fifth Amendment requires that Rule 17(c) be construed as authorizing an *ex parte* procedure by which indigent defendants may have issued trial subpoenas duces tecum for documents to be used in mounting a defense, without disclosing the defense to the Government. The five courts which have addressed the issue have held that Rule 17(c) provides for *ex parte* process for the application for, and the issuance of, a trial subpoena duces tecum. *See United States v. Hang,* 75 F.3d at 1281–82; *United States v. Jenkins,* 895 F.Supp. at 1395; *United States v. Reyes,* 162 F.R.D. at 469–70; *United States v. Florack,* 838 F.Supp. at 79–80; *United States v. Edwards,* 142 F.R.D. 177, 179 (M.D.Fla.1992).[8]

■ For the reasons set forth above, the Court holds that Rule 17(c) permits indigent defendants to apply *ex parte* for subpoena duces tecum returnable at trial (and for the service and funding essential to effectual compulsory process).

## B. SUBPOENA DUCES TECUM RETURNABLE BEFORE TRIAL.

### 1. Necessity of a Pre–Issuance Application for Pre–Trial Subpoenas Duces Tecum.

Unlike a trial subpoena ad testificandum issued under Rule 17(a) or (b), a subpoena duces tecum may also be made returnable *before trial.* The third sentence of Rule 17(c) provides:

> The court may direct that books, papers, documents or objects designated in the

subpoena be *produced before the court at a time prior to the trial* or prior to the time when they are offered in evidence *and may upon* their *production permit* the books, papers, documents or objects or portions thereof to be *inspected by the parties and their attorneys.*

Fed.R.Crim.P. 17(c) (emphasis added). *See also United States v. Nixon,* 418 U.S. 683, 698–99, 94 S.Ct. 3090, 3102–03, 41 L.Ed.2d 1039 (1974) (*citing Bowman Dairy Co. v. United States,* 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951) ("Its [Rule 17(c)] chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials.")). Although the Supreme Court, in *United States v. Nixon,* set forth the standards by which district courts are to evaluate the enforceability of a subpoena duces tecum, the Supreme Court did not address the proper procedure to be used to obtain a subpoena duces tecum with a pre-trial return date. Nor, do Rules 17(a) and 17(b), which govern the issuance of subpoenas returnable at trial, provide guidance as to the proper procedure for obtaining a subpoena duces tecum returnable before trial.

Looking first to the text, it is obvious that Rule 17(c) does not expressly require a party to make a motion to secure issuance of a subpoena duces tecum returnable before trial. However, the third sentence of Rule 17(c) clearly contemplates some intervention by the court before a subpoena duces tecum can be made returnable pre-trial and before parties may be permitted to inspect the subpoenaed documents pre-trial. *See* Fed.R.Crim.P. 17(c) (*"The court may direct* that [documents] be produced before the court at a time prior to the trial ... and *may upon their production permit* the [documents] to be inspected by the parties and their attorneys.") (emphasis added).

■ The "may direct" language confers judicial discretion to determine the time of production "prior to the trial." That, of course, affords the court authority to decide whether production before trial is permissi-

---

**8.** *See also United States v. Urlacher,* 136 F.R.D. 550, 557–58 (W.D.N.Y.1991) (suggesting that Rule 17 grants indigent defendants the right to apply *ex parte* for a "subpoena duces tecum returnable upon trial ...").

ble at all, and, if so, when. And, by providing that the subpoenaed documents "be produced before the court," Rule 17(c) clearly contemplates court involvement in the process of securing production. The same may be said of the text which gives the court discretion to permit *inspection* (which obviously must occur after production at the time and place specified) by parties and counsel. In view of the rather extensive judicial involvement contemplated by Rule 17(c) as respects pre-trial subpoenas duces tecum, it is not insignificant that neither Rule 17(a) nor Rule 17(b) contains similar language insinuating the court into the process for obtaining trial witness subpoenas. Nor does the text of Rule 17(c) similarly involve the court in the issuance of trial subpoenas duces tecum. These textual differences must be given effect. To that end, it has been held that:

> [o]nly with court intervention can the subpoena be utilized for production before the court at any time prior to the trial or prior to the time when the documents are to be offered in evidence. Only the court may, upon the production of the documents, permit the documents or objects to be inspected by the parties or their attorneys.

*United States v. Santiago–Lugo,* 904 F.Supp. 43, 46 (D.P.R.1995).[9]

Courts and commentators which have addressed the issue nearly unanimously [10] have recognized that, although the rule "does not clearly require it," the use of a *motion* as the procedural means for invoking the court's

discretion in advance of issuance of a. pre-trial subpoena duces tecum "is an orderly and desirable procedure and one frequently followed." 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 154; *see United States v. Finn,* 919 F.Supp. 1305, 1329 (D.Minn.1995); *United States v. Jenkins,* 895 F.Supp. at 1395–96; *United States v. Ashley,* 162 F.R.D. 265, 266 (E.D.N.Y. 1995); *United States v. Urlacher,* 136 F.R.D. at 554–555; *United States v. Ferguson,* 37 F.R.D. 6, 7–8 (D.D.C.1965). For the reasons set forth below, the Court agrees with that interpretation of Rule 17(c).

First, it is important to recall the purpose of Rule 17(c). The "chief innovation [of the rule] was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States,* 341 U.S. at 220, 71 S.Ct. at 679. Specifically, it provided a mechanism to prevent delays at trial which typically had occurred when documents were produced in response to a subpoena duces tecum requiring production at trial. Those delays were necessary because opposing counsel were entitled to inspect and to read the documents before they were introduced, "thereby consuming a great deal of time in those cases in which there is voluminous documentary evidence." *United States v. Ferguson,* 37 F.R.D. at 7. Also, subsection (c) affords the requesting party the opportunity to inspect subpoenaed documents in. advance of trial, "for the purpose of course of en-

9. The decision whether to require subpoenaed documents to be produced pre-trial rests with the sound discretion of the district court. *See United States v. Nixon,* 418 U.S. at 702, 94 S.Ct. at 3104–05 ("Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court because the necessity for the pretrial subpoena most often turns upon a determination of factual issues. Without a determination of arbitrariness or that the trial court finding was without record support, an appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c)."); *see also In re Martin Marietta Corp.,* 856 F.2d at 621.

10. Some courts, and one leading treatise, have cited *United States v. Van Allen,* 28 F.R.D. 329 (S.D.N.Y.1961), as standing for the proposition that "[l]eave of court is not ordinarily required for issuance of a subpoena duces tecum." 2 Wright, Federal Practice and Procedure: Crimi-

nal 2d § 274 at 154 (*citing United States v. Van Allen,* 28 F.R.D. at 334); *see also United States v. Jenkins,* 895 F.Supp. at 1395 (same). Although *Van Allen* concluded that "[p]ermission of the court is not needed to serve a subpoena pursuant to Rule 17(c)," that court addressed the issue in the context of subpoenas duces tecum producible *at trial. See United States v. Van Allen,* 28 F.R.D. at 334, 336, 337. The district court in *United States v. Gel Spice Co., Inc.,* 601 F.Supp. 1214 (E.D.N.Y.1985), recognized as much. 601 F.Supp. at 1224 (citing *Van Allen* for the proposition that: "A subpoena *returnable on the day of trial* may be issued without leave of court.") (emphasis added). To the extent, if any, that the holding in *Van Allen* is applicable to pre-trial subpoenas duces tecum, however, that case is clearly against the compelling weight of the more recent authority cited in this section of the Memorandum Opinion.

abling the party to see *whether he can use it or whether he wants to use it."* *Bowman Dairy Co. v. United States,* 341 U.S. at 220 n. 5, 71 S.Ct. at 678 n. 5 (citation omitted) (emphasis added). In sum:

> The scope of the subpoena [returnable pre-trial] is the same as that of a subpoena returnable on the day of trial. It is returnable in advance of trial in exceptional cases only as a matter of convenience and for the purpose of saving time of the Court at the trial.

*United States v. Ferguson,* 37 F.R.D. at 7–8.

Considering the need for efficient judicial procedures occasioned by the heavy demands on the federal courts today, the "exceptional cases" language may no longer be the rule. However, introduction of the delay-saving technique in Rule 17(c) clearly was not intended to displace the role of Rule 16 in circumscribing discovery to be allowed in criminal cases. The Supreme Court has emphasized that "[i] t was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms." *Bowman Dairy Co. v. United States,* 341 U.S. at 220, 71 S.Ct. at 678; *United States v. Nixon,* 418 U.S. at 698, 94 S.Ct. at 3102–03 (citing *Bowman Dairy Co. v. United States,* 341 U.S. at 220, 71 S.Ct. at 678); *see also In re Grand Jury 87–3 Subpoena Duces Tecum,* 884 F.2d 772, 775 (4th Cir.1989), *rev'd on other grounds,* 498 U.S. 292, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991); *United States v. Cuthbertson,* 651 F.2d 189, 192 (3rd Cir.1981), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed.2d 594 (1981); *United States v. Schembari,* 484 F.2d 931, 936 (4th Cir.1973). To avoid that result, the Supreme Court, in *United States v. Nixon,* held that pretrial production of evidence pursuant to Rule 17(c) is appropriate only where the moving party can show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the

application is made in good faith and is not intended as a general "fishing expedition." 418 U.S. at 699, 94 S.Ct. at 3103 (adopting Judge Weinfeld's "generally followed" formulation in *United States v. Iozia,* 13 F.R.D. 335, 338 (S.D.N.Y.1952)). In short, the requesting party must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700. And, "the burden is on the party seeking production ... to show good cause for production prior to trial." 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 155.

As discussed above, the decision whether to require production of the requested documents pre-trial rests ultimately within the sound discretion of the district court. *See United States v. Nixon,* 418 U.S. at 702, 94 S.Ct. at 3104–05; *In re Martin Marietta Corp.,* 856 F.2d at 621. That discretion must be exercised in remembrance of the responsibility to prevent Rule 17(c) from being improperly used as a discovery alternative. to Rule 16. Congress entrusted the district court with that task by providing that the return date of a subpoena duces tecum may be designated in advance of trial only if a court so "direct[s]" or "permit[s]." Fed. R.Crim.P. 17(c). The requirement of court intervention in the process is not a mere formality. To the contrary, it represents a "vital protection against misuse or improvident use of such subpoenas duces tecum." *United States v. Ferguson,* 37 F.R.D. at 8. Indeed, without the court's supervision, "Rule 17(c) would lend itself to discovery of the broadest sort—a result that the drafters of the Rule decried." *United States v. Finn,* 919 F.Supp. at 1329 (*citing* 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 153 ("it has always been clear that Rule 17(c) was not intended as a discovery device ...") (citing cases)).

In order for a district court to perform its obligations, as defined by *Bowman Dairy* and *Nixon,* to assure that Rule 17(c) subpoenas are used only to require pre-trial production of specific evidence that would be both relevant and admissible at trial, district courts must have a means by which: (i) to control the issuance of pre-trial subpoenas duces tecum; and (ii) to direct the inspection

of the documents produced in response thereto. Although Rule 17(c) does not explicitly so state, and while there is no controlling authority on this issue, the ·Court finds that the judicial intervention required by the text of Rule 17(c) and by *Nixon* and *Bowman Dairy* can best be accomplished by requiring use of traditionally accepted means to invoke the judicial discretion contemplated by the rule. The usual method to achieve that end is to file a motion and brief explaining why, and on what terms, the court should issue subpoenas duces tecum requiring pretrial production. This requirement will ensure that the judicial supervision contemplated by subsection (c) occurs at an early stage. *See United States v. Urlacher*, 136 F.R.D. at 554; *United States v. Ashley*, 162 F.R.D. at 266.

At least three district courts have read Rule 17(c) to require a motion as the procedural means by which to secure issuance of a pretrial subpoena duces tecum. *See, e.g. United States v. Finn*, 919 F.Supp. at 1329; *United States v. Jenkins*, 895 F.Supp. at 1395–96; *United States v. Ferguson*, 37 F.R.D. at 7–8. In addition, two district courts recently have held that a pre-issuance motion is desirable and "appropriate, although not strictly necessary, and should be entertained by the court." *United States v. Urlacher*, 136 F.R.D. at 555; *United States v. Ashley*, 162 F.R.D. at 266.[11]

It has been noted in both judicial decisions and in treatises that, as an alternative to requiring a pre-issuance motion, "the question [of the validity of a pre-trial subpoena duces tecum] can be raised as well on a motion to quash, a motion that is specifically authorized by Rule 17(c)." 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 at 155; *see* 25 Moore's Federal Practice §§ 617.08[3][a], [b]; *Bowman Dairy Co. v. United States*, 341 U.S. at 220, 71 S.Ct. at 678 ("The court may control the use of Rule 17(c) ... by its power to rule on motions to quash or modify."); *United States v. Urlacher*, 136 F.R.D. at 555; *United States v. Ashley*, 162 F.R.D. at 266. However, a limitation of judicial control over the Rule 17(c) pretrial subpoena process to resolution of motions to quash or modify would be insufficient to provide assurance that pre-trial subpoenas duces tecum are not abused. This is so because, although in some cases reliance upon the filing of a motion to quash or modify by the opposing party or subpoenaed entity may provide adequate assurance that the pre-trial subpoena satisfies the *Nixon* standard, there is no certainty that any such motion will be filed. In many instances, the opposing party in a criminal case will lack standing to challenge a subpoena issued to a third party because of the absence of a claim of privilege, or the absence of a proprietary interest in the subpoenaed material or of some other interest in the subpoenaed documents. *See United States v. Reyes*, 162 F.R.D. at 470–71.[12] Where that is the case,

**11.** Other courts have strongly suggested that a pre-issuance motion is the proper procedure for the application for a pre-trial subpoena duces tecum. *See, e.g. United States v. Santiago–Lugo*, 904 F.Supp. at 46 ("Only with court intervention can the subpoena be utilized for production before the court at any time prior to the trial or prior to the time when the documents are to be offered in evidence."); *United States v. Noriega*, 764 F.Supp. 1480, 1494 (S.D.Fla.1991) ("[T]he court holds that trial subpoenas may not be used to obtain a defendant's prison-recorded conversations prior to the time they are to be offered in evidence unless leave of court is obtained."); *United States v. Poindexter*, 725 F.Supp. 13, 28 (D.D.C.1989) ("[P]re-trial return dates ought not be used improperly as blank checks for the use of trial subpoenas duces tecum as a supplemental discovery device."); *United States v. Gel Spice Co., Inc.*, 601 F.Supp. at 1224–25 ("A subpoena returnable on the day of trial may be issued without leave of court. However, it is within the

discretion of the trial court whether or not to order production of subpoenaed materials prior to trial."); *United States v. Jannuzzio*, 22 F.R.D. 223, 227 (D.Del.1958) ("The fact that subpoenaed material may be evidentiary and subject to production at the trial pursuant under a subpoena duces tecum obtained by a defendant does not mean that the defendant is entitled as a matter of right to pre-trial production and inspection under Rule 17(c). Whether pre-trial production and inspection will be required is discretionary.").

**12.** *See also United States v. Raineri*, 670 F.2d 702, 712 (7th Cir.) (A party to a criminal case "has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests."), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982); *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2nd Cir.1975) (absent claim of privilege, party usually has no standing to object

the court's ability to review the use of Rule 17(c) pre-trial subpoenas duces tecum would hinge solely upon the potential filing of a motion to quash by a *third party* to the case, who often may lack the incentive or the wherewithal to make such a filing.[13] *See United States v. Noriega,* 764 F.Supp. 1480, 1493 (S.D.Fla.1991) ("While it is generally assumed that courts can protect against abuse through rulings on motions to quash or modify, this in turn assumes that the recipient of the subpoena has some interest or incentive in filing such a motion."). Where no motion to quash or to modify a subpoena duces tecum is raised to an overbroad or otherwise impermissible Rule 17(c) pre-trial subpoena, it is possible, if not likely, that improper pre-trial production and inspection will occur without the knowledge or intervention of the court. This is contrary to the explicit requirement in Rule 17(c) that only the court may "direct" or "permit" such pre-trial production and inspection. *United States v. Najarian,* 164 F.R.D. 484, 487 (D.Minn.1995) ("Of course, the production of documents, outside of the Court's presence, would entirely defeat any attempt on our part to manage and facilitate the orderly screening of documentary trial evidence.").

The decision in *United States v. Noriega,* 764 F.Supp. 1480 (S.D.Fla.1991), is instructive on the problems, and potential for abuse of Rule 17(c), inherent when the court's control over the Rule 17(c) pre-trial subpoena process is restricted to rulings on motions to quash or modify the subpoena. In *Noriega,* the Government, without applying to the court, served subpoenas duces tecum upon a correctional center, seeking pretrial production of tape recordings of the defendant's telephone conversations. 764 F.Supp. at 1492. After evaluating the issued subpoenas under the Nixon standard, the court concluded that the subpoenas constituted "precisely

the kind of unwarranted [discovery] expedition which Rule 17(c) does not permit." *Id.* at 1493. The court reasoned that the subpoena ran counter to the requirement of Rule 17(c) vesting the timing of production before trial within the discretion of the court. *Id.* ("This is to ensure that subpoenas are not used for impermissible discovery, which is more likely to be the case when advance production of materials is sought ...").

The *Noriega* Court, based on the facts presented to it, concluded that limiting the judicial control of the Rule 17(c) pre-trial subpoena process to rulings on motions to quash or modify was insufficient to provide an adequate check on abuses of pre-trial subpoenas duces tecum. In that respect, the court observed:

> while it is generally assumed that courts can protect against abuse through rulings on motions to quash or modify, this in turn assumes that the recipient of the subpoena has some interest or incentive in filing such a motion. Yet it is wishful thinking to expect that prison officials will either oppose a government-requested subpoena which implicates an incarcerated defendant's interests or else enable the defendant to file his own motion to quash by notifying him that such subpoenas have been issued. If anything, the coinciding interests of prosecutors and prison authorities in law enforcement renders these subpoenas mere formalities and all but guarantees that prosecutorial overreaching such as that present here will go unchecked, a reality which ... should have made manifest the need for prior court authorization. Given the potential for abuse apparent to the court, it is clear that the limitation on advance production of subpoenaed materials must be strictly enforced ...

to subpoena directed at non-party); *In re Grand Jury Subpoena Duces Tecum, May 9, 1990,* 741 F.Supp. 1059, 1060 n. 1 (S.D.N.Y.1990) (same), *aff'd,* 956 F.2d 1160 (2nd Cir.1992); *Ponsford v. United States,* 771 F.2d 1305, 1308 (9th Cir.1985) (absent proprietary interest in documents sought, there lies no standing to quash).

**13.** For example, in the instant case, pre-trial subpoenas duces tecum have been issued to 29 entities or persons. Apart from the motion under consideration filed by the Government, only one of those subpoenaed entities has moved to quash the subpoena which it received.

*Id.* at 1493–94.[14]

The scenario presented in *Noriega*, of course, only illustrates the possibilities for abuse of Rule 17(c) inherent in the provision for unrestricted pre-trial production. *See United States v. Jenkins*, 895 F.Supp. at 1395. The Supreme Court has emphasized the district court's responsibility to prevent such abuses of Rule 17(c): *"[T]he burden is on the court* to see that the subpoena is good in its entirety and it is not upon the [subpoenaed party] to cull the good from the bad." *Bowman Dairy Co. v. United States*, 341 U.S. at 221, 71 S.Ct. at 679 (emphasis added). And, as the district court succinctly explained in *United States v. Ferguson*,

> The burden should not be shifted to the [opposing party] to move to vacate the subpoena. The Court has an interest in preserving the proper procedure prescribed by the Rules of Criminal Procedure, irrespective of the desires of the parties.

37 F.R.D. at 8.

██ Those authorities provide a cogent rationale for an interpretation of Rule 17(c) which requires a party to file a pre-issuance motion to secure judicial authorization for a subpoena duces tecum that is returnable before trial.[15] No other construction of Rule 17(c) will permit a district court properly to exercise the discretionary powers conferred under the rule.

**14.** The *Noriega* Court's anticipation of the disparate treatment afforded a prosecution and defense subpoena came to fruition in that case: "Not surprisingly, the Bureau of Prisons was considerably less accommodating when served with a subpoena obtained by Noriega in connection with this action, which it promptly moved to quash." *Id.* at 1493 n. 14.

**15.** This, of course, places an added burden on already limited, and heavily taxed, judicial resources. However, proper applications, proper briefing, and the use of standing pretrial orders and other management techniques ought to make the task manageable.

**16.** A seventh district court, in *United States v. Ashley*, 162 F.R.D. 265, 267 (E.D.N.Y.1995), also was presented with the issue but found it unnecessary to reach that issue as a result of its other rulings.

### 2. *Ex Parte* Applications For Pre-trial Subpoenas Duces Tecum.

Having determined that Rule 17(c) requires a motion as the procedural vehicle to secure a pre-trial subpoena duces tecum, it is necessary next to determine whether Rule 17(c) permits *ex parte* applications for subpoenas of this sort. The text of Rule 17(c) does not provide the right to secure *ex parte* subpoena duces tecum returnable before trial. That, of course, necessitates resort to decisional law and other factors.

Whether a district court is authorized to entertain an *ex parte* application for a subpoena duces tecum returnable before trial is an issue which has not been decided by the Fourth Circuit. Nor is guidance available from other district courts in the circuit.

The issue recently has been addressed, however, by at least six district courts beyond this circuit.[16] Those decisions have yielded conflicting results. Two courts have held that Rule 17(c) permits the issuance of pre-trial subpoenas duces tecum upon *ex parte* application. *See United States v. Jenkins*, 895 F.Supp. 1389 (D.Haw.1995); *United States v. Reyes*, 162 F.R.D. 468 (S.D.N.Y. 1995).[17] Four courts have held that *ex parte* process is generally improper under Rule 17(c). *See United States v. Stewart*, 1997 WL 103700 (E.D.Pa.1997) (unpublished) (suggesting, however, that ex parte process is appropriate in "extraordinary circumstances"); *United States v. Najarian*, 164 F.R.D. 484 (D.Minn.1995)[18]; *United States*

**17.** Although the courts in *Hang, Florack,* and *Edwards* held that *ex parte* procedure was permissible under Rule 17(c) with respect to trial subpoena duces tecum, those decisions did not address the issue considered here—whether *ex parte* process is authorized under the rule with respect to the issuance of subpoenas duces tecum returnable *before trial*. *See United States v. Florack*, 838 F.Supp. at 80 (distinguishing the situation where the *ex parte* request is for pre-trial production of documents); *see also* 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 (1996 Supp.) at 40, 43 (concluding that *ex parte* process is permissible for trial subpoenas duces tecum but not for pre-trial subpoenas duces tecum).

**18.** In *United States v. Finn*, 919 F.Supp. 1305 (D.Minn.1995), the district court followed its previous ruling in *Najarian* that *ex parte* process under Rule 17(c) is impermissible.

*v. Hart,* 826 F.Supp. 380 (D.Colo.1993); *United States v. Urlacher,* 136 F.R.D. 550 (W.D.N.Y.1991); *see also* 2 Wright, Federal Practice and Procedure: Criminal 2d § 274 (1996 Supp.) at 43 ("If a motion is made it cannot be *ex parte*.").[19] For the reasons set forth below, the Court finds that a district court has the authority, in limited circumstances, to grant *ex parte* motions, from either the Government or a defendant, for pre-trial subpoenas duces tecum.

The analysis of this question must begin with an examination of the text of Rule 17(c) which, unlike its companion subsection (b), does not explicitly provide for an *ex parte* process. This has proven to be the dispositive factor in the decisions holding that *ex parte* procedure is impermissible under Rule 17(c) for pre-trial subpoenas duces tecum. *See United States v. Najarian,* 164 F.R.D. at 487; *United States v. Hart,* 826 F.Supp. at 381; *United States v. Urlacher,* 136 F.R.D. at 556. Also, the text of Rule 17(c) suggests an adversarial process wherein the opposing party will be provided notice and an opportunity to challenge a party's motion for the issuance of a pre-trial subpoena duces tecum.[20] Furthermore, by explicitly providing for the filing of motions to quash or modify a

pre-trial subpoena duces tecum, Rule 17(c) contemplates that litigation over the scope of such subpoenas will be conducted upon notice which, unless provided otherwise, would run to all parties to the case. *See United States v. Najarian,* 164 F.R.D. at 487 ("The Government is entitled to participate in [a hearing to address a third party's motion to quash] should it arise, and Rule 17(c) expressly contemplates the review of documents so subpoenaed by the other parties to that dispute."); *United States v. Urlacher,* 136 F.R.D. at 556 ("[O]ne cannot easily imagine that such a motion [to quash or modify] should be heard and decided in secret, without the knowledge of all parties.").

The explicit language of Rule 17(c) must, of course, be heeded by the courts and be given its full and proper effect. And, as discussed above, the rule suggests (although it does not specify), the existence of an adversarial process wherein the opposing party is notified by the adversary of an application for a pre-trial subpoena duces tecum. However, even though the text of Rule 17(c) does not explicitly contemplate *ex parte* procedure, neither does it foreclose entirely the use of such a process.[21] For the reasons

**19.** The Government cites *United States v. Santiago–Lugo,* 904 F.Supp. at 46, for the proposition that "the *ex parte* use of Rule 17(c) subpoenas is improper." Motion to Quash at 19. In *Santiago–Lugo,* the defendant issued a subpoena duces tecum which required documents to be produced directly to the defense counsel before trial, without the district court's knowledge or intervention. The district court held, based on the plain language of the Rule, that: (1) Rule 17(c) requires application to the court or other "court intervention" in order for a party to inspect subpoenaed documents before trial; and (2) Rule 17(c) does not authorize the private return of subpoenaed documents to an *attorney* but instead provides that documents shall be produced to the *court.* The *Santiago–Lugo.* Court, however, did not address the propriety of an *ex parte* application for a pre-trial subpoena duces tecum. Thus, *Santiago–Lugo* is inapposite with respect to this issue.

**20.** The Rule states that the district court may, at its discretion, "permit the [documents produced pre-trial] or portions thereof to be inspected by the *parties and their attorneys.*" Fed.R.Crim.P. 17(c) (emphasis added). In so doing, and by providing that the "parties and their attorneys" may review the subpoenaed documents, the Rule has been read to contemplate that both the Gov-

ernment and the defense should know about the documents at some point after they are subpoenaed. *See, e.g. United States v. Stewart,* 1997 WL 103700 at \*2; *see also United States v. Jenkins,* 895 F.Supp. at 1394 ("Rule 17(c) makes no provision for allowing only one party access to the documents."); *United States v. Hart,* 826 F.Supp. at 381; *United States v. Urlacher,* 136 F.R.D. at 555–56.

**21.** The suggestion by the text of Rule 17(c) of an adversarial process is undercut by two important considerations. First, it bears revisitation that pre-trial production and inspection under Rule 17(c) is entrusted to the sound discretion of the district court. *See United States v. Nixon,* 418 U.S. at 702, 94 S.Ct. at 3104–05; *In re Martin Marietta Corp.,* 856 F.2d at 621. Indeed, Congress explicitly provided for this discretion in the plain language of the Rule. See Fed.R.Crim.P. 17(c) ("The court *may direct* [pre-trial production of documents] and *may ... permit* [pre-trial inspection].") (emphasis added). Although Rule 17(c) provides that, if the court determines the documents shall be produced before the court prior to trial, the court "may permit" the documents "to be inspected by *the* parties and their attorneys," there is nothing in the rule which forecloses the district court, at its discretion,

which follow, the Court finds that, in exceptional circumstances, *ex parte* procedure may be employed with respect to the application for, and the issuance of, a subpoena duces tecum returnable before trial.

First, and most importantly, the Sixth Amendment right to compulsory process requires, in limited circumstances, the provision of *ex parte* procedure by which a defendant may secure issuance of pre-trial subpoenas duces tecum. All defendants, whether indigent or financially able, are afforded the constitutional right of compulsory process. As discussed in detail. above, Rule 17(c) implements this essential constitutional right. Forcing any defendant to confront the choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to the Government places an unconstitutional limitation on the defendant's right to compulsory process. Congress recognized as much when it amended Rule 17(b) to eliminate this choice for indigent defendants as to the issuance of trial subpoenas ad testificandum.

In the absence of *ex parte* procedure, however, the constitutionally-prohibited "Hobson's choice" would be forced upon all defendants, whether indigent and financially able, with respect to the issuance of Rule 17(c) pre-trial subpoenas duces tecum. That is because, as set forth in Section II, B, 1, a party must file a pre-issuance motion with the Court before a pre-trial subpoena will be issued.[22] And, of course, defendants must

make the *Nixon* showing of specificity, relevance, and admissibility. If the motion could never be made *ex parte*, the defendant would, in some cases, be forced to reveal his trial strategy, witnesses' identities or his attorney's work-product in order to secure the' issuance of a pre-trial subpoena.[23] If Rule 17(c) were interpreted to force that result, the defendant's "Sixth Amendment right to compulsory process for obtaining [favorable evidence] would mean little indeed." *Smith v. United States*, 312 F.2d at 872 (Wright, J., concurring in part and dissenting in part). Therefore, the Sixth Amendment supplies justification for interpreting Rule 17(c) to permit *ex parte* procedures respecting the issuance of pre-trial subpoenas duces tecum in the rare instance in which a defendant would be required to disclose trial strategy, witness identities or attorney work-product to the Government in his pre-issuance application. *See United States v. Jenkins*, 895 F.Supp. at 1396–97; *United States v. Reyes*, 162 F.R.D. at 470.

Although there is no corresponding constitutional right of the prosecution to compulsory process, the ability to subpoena evidence under Rule 17(c) extends to both the Government and defendants. See 25 Moore's Federal Practice § 617.02[1] at 617–8; 2 Wright, Federal Practice and Procedure: Criminal 2d § 271 at 134. For the Government, Rule 17(c) implements the public duty to testify and to produce evidence, which every person within the jurisdiction of the Government is bound to perform when properly summoned.

from permitting only one party, or neither party, to inspect the subpoenaed documents. *Cf. United States v. Reyes*, 162 F.R.D. at 470; *United States v. Florack*, 838 F.Supp. at 80.

Second, while ordinarily notice of a third party's filing of a motion to quash or modify a subpoena would run to the issuing party's adversary in the case, where the adverse party does not itself have standing to be heard on such a motion, as is often the case, an *ex parte* disposition of the motion would not infringe upon. the rights of the adverse party.

**22.** The indigent defendant's Fifth Amendment right not to be subjected to disabilities by the criminal justice system because of financial status is thus not implicated with respect to the issuance of pre-trial subpoenas duces tecum. In contrast to trial subpoenas ad testificandum and subpoenas duces tecum returnable at trial, which may be issued by the Government or a financially

able defendant without any court involvement or notice to the adverse party, Rule 17(c) requires a pre-issuance motion to the Court by any party seeking a pre-trial subpoenas duces tecum. Therefore, with respect to the issuance of pre-trial subpoenas duces tecum, all defendants, and, indeed, the Government, are in the same position. Therefore, indigent defendants are not singled-out for less preferential treatment as was the case under the old Rule 17(b). The district court in *United States v. Jenkins* overlooked this important distinction by advancing a Fifth Amendment discrimination argument in support of its conclusion that *ex parte* process obtained to the application for and issuance of pre-trial subpoenas duces tecum. 895 F.Supp. at 1396–97.

**23.** In the absence of *ex parte* procedure, the Government would be privy to this discovery even if a court declined to issue the subpoena. *United States v. Reyes*, 162 F.R.D. at 470.

See 2 Wright, Federal Practice and Procedure: Criminal 2d § 271 at 134 (citing *Branzburg v. Hayes*, 408 U.S. 665, 689, 92 S.Ct. 2646, 2660–61, 33 L.Ed.2d 626 (1972) (Recognizing, the "long-standing principle that the public ... has a right to every man's evidence, except for those persons protected by a constitutional, common law, or statutory privilege.")).

Because "[w]hatever else may be said of Rule 17(c), it is unqualifiedly even-handed in its approach" to applications from defendants and the Government, *United States v. Finn*, 919 F.Supp. at 1330 n. 28,[24] the Government is entitled to *ex parte* procedure for the issuance of pre-trial subpoenas duces tecum where, in the absence of such procedure, it would be required prematurely to disclose to the defense its trial strategy, witness list, or other privileged information in its application to the court. *See United States v. Reyes*, 162 F.R.D. at 470–71. Moreover, in some cases, if a source of the Government's evidence were to be identified before the issuance of a subpoena, the source or integrity of the evidence might be imperiled. *Id.* at 470.[25] This is of special concern in this case, where four of the defendants are alleged to have committed multiple murders and other violent acts, and have in the past allegedly expressed their willingness to assault law enforcement officers. *See United States v. Beckford*, 962 F.Supp. 767, 776 (E.D.Va. 1997).

The Government's concern that an *ex parte* procedure will cause subpoenas duces tecum to be issued without a showing of relevance, admissibility, and specificity is unfounded. The Government's position ignores the fact that, in support of an *ex parte* application, the requesting party must still demonstrate to the court that the subpoena meets the *Nixon* standards. *See United States v. Reyes*, 162 F.R.D. at 471. And, in reviewing applications for subpoenas duces tecum, "a court needs no assistance [from the opposing party] in applying the Nixon standard." *United States v. Jenkins*, 895 F.Supp. at 1397. Second, as discussed above, Rule 17(c) provides an alternative check on the judicial issuance of a pre-trial subpoena duces tecum—a motion to quash or modify by the subpoenaed party. Where the subpoenaed party brings a motion to quash or modify, the court must reconsider the *Nixon* standard in determining whether "compliance with the subpoena would be unreasonable or oppressive." Fed.R.Crim.P. 17(c); *see also Bowman Dairy Co. v. United States*, 341 U.S. at 220, 71 S.Ct. at 678–79.[26]

The reasons advanced by the decisions which have held that *ex parte* process is not available under Rule 17(c) with respect to pre-trial subpoenas duces tecum are not compelling. First, as previously discussed, some decisions have relied upon the text of Rule 17(c) in holding that *ex parte* procedure is unavailable under the Rule. *See United States v. Najarian*, 164 F.R.D. at 487; *United States v. Hart*, 826 F.Supp. at 381; *United States v. Urlacher*, 136 F.R.D. at 556.

---

24. *See also United States v. Najarian*, 164 F.R.D. at 488 n. 3 (same).

25. The concern over the safety of the source or integrity of the subpoenaed evidence may also obtain where a defendant identifies evidence which may be inculpatory, impeaching, or otherwise unfavorable to a co-defendant.

26. In *United States v. Reyes*, the court reasoned, in support of its holding that *ex parte* procedure was available under Rule 17(c), that "[i]f *ex parte* applications were prohibited, the adverse party would be able to challenge subpoenas issued to third parties without any claim of privilege or proprietary interest in the requested material." 162 F.R.D. at 471. To the extent that this statement implies that, in the absence of *ex parte* procedure, an application for the issuance of pre-trial subpoenas duces tecum would confer standing on the opposing party to move to quash or modify the subpoena, it is clearly mistaken. For, independent of whether *ex parte* procedure is employed, an adverse party lacks standing to challenge a subpoena absent a claim of privilege, a proprietary interest in the subpoenaed material, or other legitimate interest. At most, then, a pre-issuance application made upon notice to an adverse party would provide that party with knowledge and the opportunity to assert its standing to challenge the subpoena before the court. *See United States v. Jenkins*, 895 F.Supp. at 1393 ("The question whether a defendant seeking a pre-trial subpoena duces tecum must notify the Government does not decide the question whether, once issued, the Government may move to quash the subpoena issue to a third-party."). This, however, counsels neither for nor against the propriety of *ex parte* procedure under Rule 17(c).

The textual rationale is not persuasive, however, because the text of the rule neither permits nor forecloses the employment of *ex parte* process. Rather, it simply does not address the issue.

Second, the theory advanced in *United States v. Urlacher*, that *ex parte* process would be futile, is not persuasive. In *Urlacher*, the court held that *ex parte* process was unavailable for pre-trial subpoenas duces tecum in part because a court "may direct" that the subpoenaed material be produced to the adverse party. *Urlacher*, 136 F.R.D. at 556; *see also United States v. Hart*, 826 F.Supp. at 381 (citing *Urlacher* in reaching the same conclusion). For that reason, the court found that the *ex parte* nature of the proceeding would vanish once such production is ordered and, therefore, that there was no authority in Rule 17(c) for an *ex parte* procedure respecting issuance of the subpoena. *Id*. As other courts have recognized, however, this argument is not convincing.

> The fact that a court "may" order subpoenaed materials produced prior to trial does not mean that an *ex parte* application is necessarily superfluous; indeed, the *ex parte* nature of the procedure will not vanish if the court exercises its discretion not to order production.

*United States v. Reyes*, 162 F.R.D. at 470; *see also United States v. Florack*, 838 F.Supp. at 80. Moreover, upon a proper showing, the court could exercise its discretion under Rule 17(c) to permit pre-trial inspection by only the requesting party.[27]

■ Third, as in *Urlacher*, some decisions have invoked principles respecting public access to court proceedings as justification for denying *ex parte* process under Rule 17(c). *See United States v. Urlacher*, 136 F.R.D. at 556–58; *see also United States v. Hart*, 826 F.Supp. at 382 (citing *Urlacher* in reaching the same conclusion). However, these concerns were significantly overstated in *Ur-*

*lacher*. It is true, of course, that there is a presumption in favor of a First Amendment right of access to pre-trial criminal proceedings for which "the place and process have historically been open to the press and general public." *Press–Enterprise Company v. Superior Court of California for Riverside County (Press–Enterprise II)*, 478 U.S. 1, 8–9, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1 (1986). And, recent decisional law in the Fourth Circuit shows a trend in favor of recognizing a qualified right of access, either founded in the First Amendment or the common law, to documents filed in connection with pre-trial proceedings in criminal prosecutions. *See, e.g. In Matter of the Application & Aff. For A Search Warrant (The Washington Post Company )*, 923 F.2d 324, 326–29 (4th Cir.) (affidavit supporting search warrant application), *cert. denied sub nom., Hughes v. Washington Post Co.*, 500 U.S. 944, 111 S.Ct. 2243, 114 L.Ed.2d 484 (1991); *In re the State–Record Company, Inc.*, 917 F.2d 124, 127–29 (4th Cir.1990) (Government response to defendant's *Brady* and Rule 404(b) motions which were alleged to be prejudicial and which would be subject of intense publicity).

■ The right to access is not, however, an absolute one. *Id*. And, in many cases the qualified right of access may conflict with the defendant's Sixth Amendment rights, as was the case in both *The Washington Post Company* and *In re the State Record Company, Inc*. In an appropriate case, therefore, the qualified right of access can be outweighed by a constitutional or other interest of the defendant. *The Washington Post Company*, 923 F.2d at 326–29; *In re the State Record Company, Inc.*, 917 F.2d at 127–29. Indeed, the *Urlacher* Court recognized as much. *United States v. Urlacher*, 136 F.R.D. at 556.

Whether *ex parte* process or the sealing of documents is appropriate must necessarily be determined based on the specific circumstances presented in a particular case. *The*

---

27. In *Urlacher*, the defendant had requested in his *ex parte* application that both the defense and the Government be permitted to inspect the subpoenaed materials. *See United States v. Urlacher*, 136 F.R.D. at 556; *see also United States. States v. Stewart*, 1997 WL 103700 at *2 (Government conceded that defendant should have access to the subpoenaed documents but nevertheless requested that its filings and the related court orders remain under seal). Under those circumstances, where both parties will have pre-trial access to the subpoenaed documents, it would be entirely unnecessary to have an *ex parte* proceeding. *See United States v. Stewart*, 1997 WL 103700 at *2; *United States v. Reyes*, 162 F.R.D. at 470 n. 2.

*Washington Post Company,* 923 F.2d at 326–29; *In re the State Record Company, Inc.,* 917 F.2d at 127–29. Here, it suffices to note that the slight burden imposed upon the free access to the courts by the secrecy of the pre- and post-issuance process of a subpoena duces tecum most often will be overcome by a defendant's Sixth Amendment right to compulsory process without being required to disclose his witnesses, trial strategy and other aspects of his defense to the Government and the public at large. *Cf. United States v. Jenkins,* 895 F.Supp. at 1397.

For the foregoing reasons, the Court finds that Rule 17(c) authorizes *ex parte* procedure with respect to the issuance of pre-trial subpoenas only in exceptional circumstances. Ordinarily, *ex parte* procedure will be unnecessary and thus inappropriate. For example, where one party subpoenas documents from the files of the opposing party, *ex parte* procedures would not be available. The same would obtain for defense subpoenas seeking documents from state law enforcement agencies officially involved in the federal, investigation of the crimes on trial. Nor could *ex parte* process be used to seek documents as to which both parties will have pre-trial access. *See United States v. Urlacher,* 136 F.R.D. at 556; *see also supra* note 27.

■ However, in limited circumstances, a district court may be warranted in exercising its discretion to permit *ex parte* process. In those rare situations where mere disclosure of the application for a pre-trial subpoena would: (i) divulge trial strategy, witness lists or attorney work-product; (ii) imperil the source or integrity of subpoenaed evidence; or (iii) undermine a fundamental privacy or constitutional interest of the defendant, the *ex parte* process could be available on a

proper showing.[28] For example, *ex parte* process might be proper where a defendant seeks from medical providers records of his own mental or physical health where that is in issue in the case. The same would be true where a defendant seeks records about himself from public agencies such as federal or state social service agencies or from his military service. And, where state law enforcement agencies or courts have concluded investigations or proceedings and are not involved in the federal prosecution, subpoenas for those records might be obtainable by *ex parte* process where the requested records are obviously linked to a specific defense theory. All of these examples present circumstances where documents could be expected to be of use to the defense and, as to which, a satisfactory *Nixon* showing could result in the disclosure of the trial tactics, the actual defense to be advanced at trial, or other undue disclosure to the Government.

In most instances, it will not be necessary to disclose trial strategy, divulge witnesses or work product, or implicate a privacy right merely to make the application for issuance of a pre-trial subpoena duces tecum. And, a party seeking to proceed *ex parte* will have to meet a heavy burden to proceed in that fashion.

For the most part, a party seeking an *ex parte* pre-trial subpoena duces tecum will be able to serve a motion on the adversary asking that the subpoena ultimately be issued *ex parte* and explaining why it is necessary to proceed *ex parte.* That affords the opposing party an opportunity to be heard on the need for the *ex parte* procedure. Indeed, that procedure has been followed in implementing the recent amendments to 28 U.S.C. § 848(q)(9) in habeas corpus actions. *See* 18

---

**28.** Indeed, even courts which have rejected parties' attempts to obtain pre-trial subpoenas *ex parte* have recognized that, in extraordinary circumstances, *ex parte* process may be authorized under Rule 17(c). *See, e.g. United States v. Stewart,* 1997 WL 103700 at *2 ("[T]he plain language of Rule 17(c) does not contemplate an *ex parte* procedure, at least not absent extraordinary circumstances.... [T]he government has not established that secrecy is required to preserve the source or integrity of evidence."); *United States v. Najarian,* 164 F.R.D. at 488 (rejecting categorical approach to the denial of *ex*

*parte* process under Rule 17(c) and noting that, "the evidentiary documents, which the Defendant may appropriately request, do not, even inferentially, disclose any of his work product or litigation' strategies."); *United States v. Urlacher,* 136 F.R.D. at 557 (in rejecting defendant's attempt to invoke *ex parte* process, the court noted that, "it is difficult to discern how an adversary presentation of the motion for issuance of the subpoena duces tecum would impinge on the defendant's rights against, for example, premature disclosure of trial strategy.") (quotations omitted).

U.S.C. § 848(q)(9) ("No *ex parte* proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality."). Of course, that route will require lawyers to write more precisely than usual and to think through their reasons for proceeding *ex parte*. That, however, is a salutary development. The by-product inevitably will be that, upon careful analysis, most lawyers will realize that they cannot satisfy these requirements or those of *Nixon* and *ex parte* applications will be filed rarely and likely will be granted less frequently. Of course, that is as it should be.

Guided by these controlling principles, the Court will now consider the Government's Motion To Quash.

### III. DISPOSITION OF THE GOVERNMENT'S MOTION TO QUASH.

 When presented with an *ex parte* motion for a Rule 17(c) pre-trial subpoena duces tecum, the district court must first determine whether the *ex parte* nature of the application is appropriate. If *ex parte* procedure is unwarranted, the court should unseal the motion, and provide notice to the opposing party. If the application implicates one of the limited circumstances in which proceeding *ex parte* is proper, the application and proposed subpoena should be filed under seal.

 In either case, the court must next assess the proposed subpoena and the motion in support thereof under the standards set forth in *United States v. Nixon*, 418 U.S. at 699–700, 94 S.Ct. at 3103–04. To secure issuance of a subpoena, the requesting party must satisfy *Nixon's* burden of proof as to the relevancy, admissibility and specificity of the requested documents. *Id.* at 700, 94 S.Ct. at 3103–04. To do that, the party must show:

> (1) that the documents are *evidentiary and relevant;* (2) that they are *not otherwise procurable reasonably in advance* of trial by exercise of due diligence; (3) that the party *cannot properly prepare for trial*

*without such production* and inspection *in advance* of trial and that the failure to obtain such inspection may tend *unreasonably to delay the trial;* and (4) that the application is made in *good faith* and is not intended as a general "fishing expedition." *Id.* at 699, 94 S.Ct. at 3103 (emphasis added). If a satisfactory showing is made, the court, at its discretion, may issue the subpoena, require pre-trial production, and permit pre-trial inspection by one or more of the parties.

In this case, the Court, pursuant to *ex parte* orders filed under seal, has issued a total of twelve pre-trial subpoenas duces tecum on behalf of defendants. The Government has moved to quash many of the subpoenas on the basis that: (1) the *ex parte* nature of the subpoenas was impermissible given the nature of the documents which were the subject of the subpoenas; and (2) that many of the requested documents constitute *Brady*, Jencks, or *Giglio* material, production of which is governed by previous orders of this Court and which is not permitted under Rule 17(c).[29] The Court will consider the challenged subpoenas in turn.

 Four of the challenged subpoenas issued on behalf of individual defendants directed various state and federal correctional facilities and other state governmental agencies to produce records concerning the requesting defendant. As to these subpoenas, *ex parte* process is proper because the defendants' various *Nixon* disclosures implicate the rights of defendants not to disclose their trial strategy and to maintain the privacy of their confidential records. The subpoenas were issued upon the satisfactory *Nixon* showings in support thereof.

 Seven of the challenged subpoenas required the production of material which, arguably, may constitute *Brady*, Jencks, or *Giglio* impeachment material. The Government correctly notes that a Rule 17(c) subpoena duces tecum is improper where it calls for the production of *Brady*, Jencks, or *Giglio* material. That is because those materials are subject only to limited discovery pursuant to Fed.R.Crim.P. 16, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Jencks Act, 18 U.S.C. § 3500.

29. For purposes of decision, the Court assumes that the Government has standing to challenge the issued subpoenas; neither party raised the issue at argument or in the papers.

Thus, none of that material can be said to be "not otherwise procurable reasonably in advance of trial." *United States v. Nixon,* 418 U.S. at 699, 94 S.Ct. at 3103. Indeed, pursuant to this Court's previous orders in this case, the Government has already produced *Brady* material and it must produce all *Giglio* impeachment evidence and Jencks Act material not later than three days before the commencement of the jury selection process.

The courts uniformly have rejected attempts at procuring additional or advance discovery through the use of Rule 17(c) subpoenas. *See, e.g., United States v. Nixon,* 418 U.S. at 701, 94 S.Ct. at 3103 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production [under Rule 17(c)] in advance of trial."); *United States v. Hughes,* 895 F.2d 1135, 1146' (6th Cir.1990) (Rule 17(c) subpoena to third party for impeachment material improper); *United States v. Cuthbertson,* 651 F.2d at 195 (Rule 17(c) subpoenas are not available to obtain exculpatory information in the possession of the prosecution); *United States v. Jenkins,* 895 F.Supp. at 1394 (Rule 17(c) not to be used to gather impeachment material). Moreover, Rule 17 itself prohibits procuring *Jencks* material through the use of a Rule 17(c) subpoena. To that effect, Rule 17(h) states:

> **(h) Information Not Subject to Subpoena.** Statements made by witnesses or prospective witnesses may not be subpoenaed from the government or the defendant under this rule, but shall be subject to production only in accordance with the provisions of Rule 26.2.

Fed.R.Crim.P. 17(h). Rule 26.2, in turn, follows the restrictions set forth in the Jencks Act.

There being no showing that *ex parte* procedure was proper for the issuance of those subpoenas which arguably implicated *Brady, Jencks,* and *Giglio,* the Court unsealed the

subpoenas by Order dated April 23, 1997. The parties have subsequently resolved their disputes over those subpoenas and consequently the subpoenas, although previously at issue, are now moot.

Lastly, a subpoena duces tecum was issued to the Richmond Office of Probation and Parole requiring the production of the state pre-sentence report of one Tracy Lavache, an expected Government witness in this case. Although the subpoena was issued upon the *ex parte* application of Defendant Beckford, the Court previously held that Beckford was entitled to compulsory process to secure the pre-sentence report. *See United States v. Beckford, et al.,* 962 F.Supp. at 802 n. 15. The Government, which was, then, on notice of Beckford's intent to subpoena the Lavache report, agreed to assist Beckford in obtaining the report. *Id.* at 802 n. 14. And, Beckford has already inspected. the report, which has been produced to the Court pursuant to the subpoena. Although, upon further review, *ex parte* process was not necessary with respect to this subpoena, the issue was not raised here by the Government and is, in any event, now moot.[30]

For the reasons set forth in this Memorandum Opinion, the Government's Motion To Quash is GRANTED IN PART. Any future applications for subpoenas duces tecum by either the Government or a defendant shall be made in accordance with the requirements of this Memorandum Opinion.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

---

**30.** It should be noted that the Court granted an *ex parte* motion by the Government for a pre-trial subpoena duces tecum upon a sufficient *Nixon* showing by the Government. That subpoena required the production of certain school records for Defendant Thomas. The order pursuant to which the subpoena was issued provided that the produced documents be filed under seal and that only the Government and Thomas were permitted to inspect the records. This limitation upon the review of the records was necessary to protect Thomas' legitimate interest in the privacy of the school records. Moreover, the process was *ex parte* only insofar as Thomas' co-defendants were concerned; both parties as to which the records were relevant—the Government and Thomas—were permitted pre-trial access to the records. Therefore, *ex parte* procedure was appropriate.